UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

:

SHANNON THOMASON and VINNIE PENNA,                           :
*as Parents and Natural Guardians of E.P.*, and              :
SHANNON THOMASON and VINNIE PENNA,                           :
*Individually*,                                               :

:

                                    Plaintiffs,               :

:

            -v-                                               :

:

MEISHA PORTER, *in her official capacity*                    :
*as the Chancellor of the New York City*                     :
*Department of Education*, and                                :
NEW YORK CITY DEPARTMENT                                      :
OF EDUCATION,                                                 :

:

                                    Defendants.               :

:

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/13/2023

21-cv-6713 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Shannon Thomason ("Thomason") and Vinnie Penna (together with "Thomason," the "Parents" or "Plaintiffs"), individually and on behalf of their minor son E.P., bring this action against Meisha Porter and the New York City Department of Education (collectively, the "DOE") pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400–1482. Plaintiffs seek an order (i) vacating and reversing the determination of the State Review Officer ("SRO") upholding the decision of an Impartial Hearing Officer ("IHO") that the proposed Individualized Education Program ("IEP") did not deny E.P. a Free Appropriate Public Education ("FAPE") and (2) requiring the DOE to fund E.P.'s educational placement at the International Institute for the Brain ("iBRAIN") for the 2019-2020 extended school year.

The parties have cross-moved for summary judgment.  For the following reasons, the Parents' motion for summary judgment is denied and the DOE's cross-motion for summary judgment is granted.

## BACKGROUND

### I.    Factual Overview

### A.    E.P.'s Factual Background

During the 2019-2020 school year, E.P. was a nine-year-old boy with significant disabilities including cerebral palsy, spastic quadriplegia, and hypoxic ischemic encephalopathy. Dkt. No. 26 ("Pl. 56.1") ¶ 2; Dkt. No. 32 ("DOE 56.1") ¶ 2.  E.P. is nonverbal and non-ambulatory and E.P.'s disabilities adversely affect his motor and sensory functioning, information processing, and language and speech, which in turn affect his educational abilities and performance.  Pl. 56.1 ¶¶ 2–4; DOE 56.1 ¶¶ 2–4.  E.P. uses a wheelchair, requires assistance to eat, and uses assistive technology to communicate.  *See* Pl. 56.1 ¶ 5; DOE 56.1 ¶ 5; Certified Administrative Record ("R-") 00953.  E.P.'s IEP categorizes E.P.'s disability as a Traumatic Brain Injury.  Pl. 56.1 ¶ 7; DOE 56.1 ¶ 7.  The IEP describes E.P. as "a pleasant, delightful and intellectual child."  R-953.

During the 2018-2019 school year, E.P. was a student at iBRAIN, a school that educates children with brain injuries and brain-based disorders.  Pl. 56.1 ¶¶ 10–11; DOE 56.1 ¶ 10.  On April 30, 2019, an IHO ordered the DOE to fund E.P.'s placement at iBRAIN for the 2018-2019 school year, with certain reductions in the amount of tuition covered, after finding that the DOE failed to offer E.P. a FAPE.  Pl. 56.1 ¶ 13; DOE 56.1 ¶ 13.

### B.    Development of E.P.'s 2019-2020 IEP

On February 4, 2019, DOE's Committee on Special Education ("CSE") sent a Meeting Notice to the Parents to schedule a meeting on March 8, 2019 for the purposes of developing

E.P.'s IEP for the 2019-2020 school year.  Pl. 56.1 ¶ 14; DOE 56.1 ¶¶ 14, 54.[1]  On February 6,

2019, the DOE emailed the Parents to discuss their scheduling preferences for the 2019-2020

meeting.  DOE 56.1 ¶ 54.  The Parents responded by letter dated February 19, 2019, requesting

that the IEP be a "Full Committee Meeting" with a DOE school physician and a parent member

present and requested that both the DOE school physician and parent member participate in the

meeting in person.  Pl. 56.1 ¶ 15; DOE 56.1 ¶ 15.  The Parents also advised the DOE that they

were available to attend a meeting during the work week from 9:00 a.m. to 11:00 a.m.  DOE 56.1

¶ 54.

On March 27, 2019, the DOE sent the Parents a second Meeting Notice, rescheduling the

IEP meeting to April 9, 2019 at 10:30 a.m.  *Id.* ¶ 55.  The Parents responded through counsel on

April 4, 2019 and requested that the meeting be rescheduled because the Parents had not yet

received the mailed copy of the Meeting Notice and the Meeting Notice did not list the names of

the DOE school physician and the parent member.  Pl. 56.1 ¶ 16; DOE 56.1 ¶¶ 16, 56.  The letter

also reiterated the Parents' request that the DOE school physician participate in the IEP meeting

in person.  Pl. 56.1 ¶ 16; DOE 56.1 ¶ 16.  The DOE sent the Parents a third meeting notice on

April 23, 2019, rescheduling the IEP meeting to June 7, 2019[2] at 9:00 a.m.  Pl. 56.1 ¶ 17 (citing

R-947–49); DOE 56.1 ¶¶ 17, 57.  The April 23 letter contained the name of the DOE school

physician and the parent member.  *See* Pl. 56.1 ¶ 17; DOE 56.1 ¶¶ 17, 57.  By letter dated

May 20, 2019, the Parents through counsel sent the DOE a letter identifying several alleged

---

[1] Pursuant to Local Rule 56.1, the DOE 56.1 contains additional undisputed facts in sequentially numbered paragraphs following the DOE's response to Plaintiff's statement of undisputed facts at paragraphs 1–52.

[2] Plaintiffs contend in their Rule 56.1 statement that the meeting was scheduled for June 7, 2020 and the DOE does not dispute this fact.  *See* Pl. 56.1 ¶ 17; DOE 56.1 ¶ 17.  However, the record clearly demonstrates, *see, e.g.*, R-947, that "2020" was a typographical error and the meeting was scheduled for June 7, 2019.

deficiencies in DOE communications, including an email that misidentified the name of the Parents' child, a several-day delay in receiving the April 23 letter, and another letter dated April 29, 2019, both of which had an incorrect zip code for the Parents' address and other alleged errors in a classroom observation report and social history update. *See* Pl. 56.1 ¶ 18; DOE 56.1 ¶ 18.

On June 7, 2019, the CSE convened to formulate E.P.'s IEP for the 2019-2020 school year (the "June 2019 IEP"). Pl. 56.1 ¶ 20; DOE 56.1 ¶ 20. The Parents were present in person for the meeting, as were an additional parent member, a district psychologist, a special education teacher, and a district social worker. Pl. 56.1 ¶ 20 (citing R-981); DOE 56.1 ¶¶ 20, 59. The DOE school physician joined the meeting telephonically, as did E.P.'s educational team from iBRAIN. Pl. 56.1 ¶ 20; DOE 56.1 ¶¶ 20, 59. Approximately thirty minutes into the IEP meeting, Thomason noted her objection to the DOE school physician appearing telephonically and removed herself from the meeting. Pl. 56.1 ¶ 20; DOE 56.1 ¶¶ 20, 59. E.P.'s educational team then discontinued participation in the IEP meeting. DOE 56.1 ¶ 59.

The CSE recommended that E.P. attend a twelve-month academic program in a specialized public school in a classroom with a ratio of eight students to one teacher and one paraprofessional (known as an "8:1:1 class"). Pl. 56.1 ¶ 21; DOE 56.1 ¶¶ 21, 60; *see S.K. v. City Sch. Dist. of City of New York*, 2020 WL 1244473, at *2 (S.D.N.Y. Mar. 13, 2020). The CSE also recommended that E.P. be provided certain related services, including adapted physical education three times per week, counseling in a group of three in one thirty-minute session per week, occupational therapy in five thirty-minute sessions per week, physical therapy in five thirty-minute sessions per week, individual speech-language therapy in four sixty-minute sessions per week, small group speech-language therapy in one sixty-minute session per week, a

full time 1:1 paraprofessional for support with health and activities of daily living, assistive technology devices and software, and special transportation.  Pl. 56.1 ¶ 21; DOE 56.1 ¶¶ 21, 60.

On June 21, 2019, the Parents sent the DOE a 10-Day Notice, advising the DOE that they intended to unilaterally enroll E.P. in iBRAIN and to seek public funding for the placement.  Pl. 56.1 ¶ 25; DOE 56.1 ¶ 25.  The Parents subsequently enrolled E.P. at iBRAIN for the 2019-2020 school year and entered into a contract for school transportation services.  Pl. 56.1 ¶ 28; DOE 56.1 ¶ 28.

On July 31, 2019, the CSE modified E.P.'s June 2019 IEP (the "July 2019 IEP").  Pl. 56.1 ¶ 27; DOE 56.1 ¶ 27.  The CSE made two modifications to the June 2019 IEP:  The CSE added transportation services and it added nursing services for E.P.  Pl. 56.1 ¶ 27; DOE 56.1 ¶ 27.  It is disputed whether the CSE held another meeting before modifying E.P.'s IEP.  Pl. 56.1 ¶ 27; DOE 56.1 ¶ 27.

### C.    Due Process Complaint and Proceedings Before the Impartial Hearing Officer

On July 8, 2019, the Parents through counsel filed a due process complaint ("DPC").  Pl. 56.1 ¶ 31; DOE 56.1 ¶ 31.  The DPC challenged CSE's recommendation, arguing that the DOE failed to offer E.P. a FAPE for the 2019-2020 school year because it had committed several procedural and substantive errors under the IDEA and New York State law.  R-1047.  Specifically, the DPC alleged that (1) the DOE failed to hold the CSE at a mutually agreeable time; (2) the DOE ignored the Parents' request that the physician attend the CSE meeting in person; (3) the June 2019 IEP was not a product of an individualized assessment of E.P.; (4) the IEP would expose E.P. to "substantial regression" due to the reduction in related services and the recommended student-to-teacher ratio; (5) the IEP does not reflect the individual needs of E.P. and has immeasurable goals; and (6) the school program and placement were inappropriate.

R-1047–48.  The DPC also requested an interim order of pendency based on the April 30, 2019

IHO decision, which would require the DOE to prospectively pay for E.P.'s tuition at iBRAIN

and his transportation needs to iBRAIN.  R-1046–47.

An impartial hearing was held on August 14, 2019, August 21, 2019, and September 9,

2019 to address the pendency order.  SRO Decision ("SRO Dec.") 5.  On August 21, 2019,[3] the

IHO issued a pendency order, which funded E.P.'s placement at iBRAIN during the 2019-2020

school year.  IHO Decision ("IHO Dec.") 2.  The impartial hearing reconvened on the merits on

September 19, 2019 and continued over fourteen days through February 9, 2021.  Pl. 56.1 ¶ 33;

DOE 56.1 ¶ 33; SRO Dec. 5.  On March 22, 2021, the IHO issued his decision.  Pl. 56.1 ¶ 34;

DOE 56.1 ¶ 34.

The IHO concluded that the DOE offered E.P. a FAPE during the 2019-2020 school year.

IHO Dec. 6–7.  In so concluding, the IHO found that the 8:1:1 class was sufficiently restrictive to

provide the required level of services for E.P.  *Id.* at 6.  The IHO also found that the procedural

violations with respect to the meeting notices and other communications were "*de minimus*

[*sic*]," and the DOE physician's participation by telephone did not limit the physician's ability to

review the records and offer his opinion on placement.[4]  *Id.* at 6–7.  The IHO also concluded that

"there is no persuasive evidence that 30 minute sessions [for occupational and physical therapy]

would prevent the student from accessing the curriculum."  *Id.* at 7.  Finally, the IHO found that

the annual goals contained in the IEP were appropriate.  *Id.*  The IHO made no findings with

---

[3] Though the SRO decision suggests that the pendency order was issued August 22, 2019, *see*
SRO Dec. 5, the IHO decision states that the pendency order was issued on August 21, 2019, *see*
IHO Dec. 2.  This difference is immaterial.
[4] The IHO wrote that the physician's telephone participation "*did* limit the physician's ability to
review the student's education records and offer an opinion on placement."  *See* IHO Dec. 7
(emphasis added).  However, in context, it is clear that the IHO made a typographical error and
unintentionally failed to insert a "not" after "did."

respect to the appropriateness of the Parents' placement or the equities.  Pl. 56.1 ¶ 35; DOE 56.1 ¶ 35; IHO Dec. 7.

### D. Proceedings Before the State Review Officer

On May 3, 2021, the Parents appealed the IHO's decision to the Office of State Review of the New York State Education Department.  Pl. 56.1 ¶ 37; DOE 56.1 ¶ 37.  The Parents raised several claims on appeal related to procedural errors in the development of E.P.'s June 2019 IEP, including: (1) that the DOE failed to timely evaluate the student and to provide proper meeting notices; (2) that the DOE failed to schedule the June 2019 IEP meeting at a "mutually agreeable time"; (3) that there were deficiencies in the meeting notices and prior written notices sent ahead of the June 2019 IEP meeting; (4) that the DOE failed to send out meeting notices prior to the July 2019 IEP meeting; and (5) that the IHO erred in concluding that the DOE school physician's participation by telephone did not deny the Parents' meaningful participation in the meeting. SRO Dec. 6–7.  The Parents also challenged the substantive adequacy of the IEP, arguing (1) that the IHO failed to address the appropriateness of E.P.'s student grouping when determining that E.P.'s proposed placement was appropriate; (2) that the IHO ignored the recommendation of E.P.'s physician and iBRAIN's special education director concerning E.P.'s need for sixty-minute occupational and physical therapy sessions and the testimony of a district witness that the proposed placement was not capable of implementing the June 2019 IEP; and (3) that the IHO erred by not issuing a determination on the appropriateness of iBRAIN as a placement for the 2019-2020 school year and in not addressing the equities.  *Id.* at 7.

On June 3, 2021, in a twenty-page decision, the SRO, Justyn P. Bates, affirmed the IHO decision.  Pl. 56.1 ¶ 38, DOE 56.1 ¶ 38; *see generally* SRO Dec.  The SRO first provided a detailed overview of the factual and procedural history of E.P.'s case, *see* SRO Dec. 2–6, followed by a review of the applicable standards that would guide his decision, *see id.* at 7–9.

The SRO next turned to the merits of the Parents' appeal.  The SRO concluded that the Parents were precluded from arguing that the IHO erred by not considering the Parents' allegations concerning the DOE's failure to appropriately evaluate E.P. and to place E.P. in a group of students with similar needs because these allegations were not raised in the DPC.[5]  *Id.* at 9–10. The SRO rejected the Parents' argument that the DOE had "opened the door" to these issues during the IHO hearing, and thus concluded that the DOE did not expand the scope of the arguments that the IHO was permitted to entertain.  *Id.*  In fact, the SRO found that it was the Parents' attorney, not the DOE, that broached the subject matter "without IHO approval" and that the two DOE questions concerning E.P.'s placement were related to E.P.'s placement at iBRAIN, not in E.P.'s recommended placement.  *Id.* at 10 n.8.  As a result, the SRO concluded, "[I]t is unsurprising that the IHO did not rule upon those particular issues, and they cannot be permissibly raised on appeal."  *Id.* at 10.

The SRO next turned to the Parents' procedural challenges to the CSE process.  The SRO concluded that the Parents' claim that the IEP meeting was not scheduled "at a mutually convenient time" lacked merit.  *Id.* at 10.  To the contrary, the SRO concluded that the hearing record demonstrated that the DOE "attempted to accommodate" the Parents' schedules "by soliciting preferred dates or times, cancelling several scheduled CSE meetings, responding to the [Parents'] concerns, and rescheduling the meeting."  *Id.*  The SRO did find that the DOE disregarded the Parents' request that the DOE school physician appear in person at the June 7, 2019 meeting in violation of New York regulation, but determined that it was a "technical violation of state procedures[ that] does not rise to the level of a denial of a FAPE."  *Id.* at 11

---

[5] The SRO further concluded that the evidence at the hearing demonstrated that that the CSE did evaluate the student in February and March of 2019.  SRO Dec. 10 n.7.

(citing 8 N.Y.C.R.R. § 200.5(d)(7)).  The SRO observed that it was the Parents who elected to

leave the meaning after thirty minutes and thus "it was the [Parents] who conducted themselves

in a manner that limited their own participation," not the DOE.  *Id.*

In a footnote, the SRO addressed the July 2019 IEP.  *See id.* at 6 n.5.  The SRO noted that

the two IEPs appeared to be materially identical, with the exception of the addition of "non 1:1"

school nursing services, "which may have been related to a HIPAA form."  *Id.*  In any event, the

SRO found that the July 2019 IEP was not relevant to his review because the Parents had waived

any argument related to school nursing services by not including it in their DPC and because "the

[P]arents had already rejected the public programming" at the time the July 2019 IEP was issued.

*Id.*

The SRO then reviewed the Parents' substantive challenges to the June 2019 IEP.  The

SRO detailed at length the June 2019 IEP's overview of E.P.'s present levels of performance,

including E.P.'s academic, social, occupational, and motor skills, and he noted that the June 2019

IEP's present levels of performance drew heavily from the IEP developed by iBRAIN for the

2019-2020 school year.  *Id.* at 12–16.  The SRO focused primarily on E.P.'s physical

development and motor skills, which are particularly relevant to the Parents' primary substantive

challenge to the recommended length of E.P.'s occupational and physical therapy sessions.  *See*

*id.* at 13–16.  The SRO then reviewed the testimony of the DOE psychologist, who served as the

chair of the CSE, and the testimony of the director of special education at iBRAIN.  *Id.* at 17–18.

The DOE psychologist testified that the duration of services recommended in an IEP

depends on the individual student's needs, stamina, endurance, required support, and goals.  *Id.*

at 17.  She testified that the speech therapy sessions were recommended for sixty minutes

because the sessions were designed to address additional goals, including feeding.  *Id.*  In

contrast, E.P. was only working on fine motor skills, and not on feeding, during his occupational therapy sessions and thus thirty-minute sessions were appropriate. *Id.* at 17–18. The DOE psychologist further testified that thirty-minute sessions were appropriate because of E.P.'s difficulty maintaining mental and physical focus for sixty minutes. *Id.* at 18. With respect to the length of the recommended physical therapy sessions, the DOE psychologist testified that thirty-minute sessions were necessary "in light of [E.P.'s] stamina and ability to participate in [physical therapy] without exerting too much strain on his body or ability to remain engaged." *Id.* at 17. She further testified that the length of the sessions was based primarily on the goals that E.P. was working on, and that endurance did not affect the length of the session but would affect whether or not a session was considered complete or had to be made up. *Id.*

In contrast, the director of special education at iBRAIN testified that sixty-minute sessions were necessary to transfer and reposition E.P. and to give E.P. sufficient rest between exercises. *Id.* at 18. She testified that the difference between thirty- and sixty-minute sessions was "night and day" for students like E.P. and that E.P. was working on holistic muscle and body-control development, which required more time than working on discrete skills. *Id.* She concluded that it would be impossible to accomplish everything that E.P. required during thirty-minute sessions. *Id.* The SRO noted that the IEP developed by iBRAIN for the 2019-2020 school year stated that E.P. would regress if the duration of E.P.'s occupational and physical therapy sessions was reduced below sixty minutes, but later noted that sixty-minute physical therapy sessions were necessary to make the maximal amount of progress for E.P. *Id.*

Based on this testimony and the evidence in the record, the SRO concluded that the "CSE did not indiscriminately reduce the duration of the student's related services sessions." *Id.* at 19. In contrast, the SRO concluded that the CSE determined the length of the sessions based on

E.P.'s needs and goals, and that the thirty-minute sessions were consistent with the purpose of

the IDEA, which does not guarantee a "maximization of educational benefits." *Id.* The SRO

noted that "the hearing record does not indicate that the student was easily fatigued," contrary to

the DOE psychologist's testimony; the CSE thus was making a tradeoff between the E.P.'s motor

and academic needs and "the district members of the CSE favor[ed] more time spent in the

classroom and less time spent in therapy sessions." *Id.* "But that disagreement," the SRO found,

"does not amount to a denial of a FAPE." *Id.* As the SRO concluded, "Although the CSE

recommended certain related service therapy sessions that were shorter in duration than the

parents preferred considering the totality of the student's needs, this does not form a basis for

finding that the IHO erred in concluding that the district offered the student a FAPE." *Id.*[6]

## II.   Statutory Overview

The IDEA requires that each state "provide disabled children with a free appropriate

public education." *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 9 (1993) (internal

quotation marks and citation omitted); *see also* 20 U.S.C. § 1412. The mechanism established

by the IDEA to guarantee a FAPE to disabled children is the IEP. *See* 20 U.S.C.

§ 1414(d)(1)(A); *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 415 (2d Cir. 2009) ("[T]he

centerpiece of the IDEA's education delivery system is the individualized education program or

'IEP.'" (internal quotation marks and citation omitted)). The IEP "must be 'reasonably

calculated to enable the child to receive educational benefits.'" *T.M. ex rel. A.M. v. Cornwall

Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176,

207 (1982)). The IDEA, however, only guarantees an "appropriate education, not one that

---

[6] The SRO noted that because the IHO found that the DOE had offered E.P. a FAPE, it was not
required to determine whether the Parents' alternative placement at iBRAIN was adequate or
whether equitable considerations precluded relief. *Id.* at 20.

provides everything that might be thought desirable by loving parents." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir. 1998) (internal quotation marks and citation omitted); *see also M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015) ("The IEP 'must be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement.  However, it need not furnish every special service necessary to maximize each handicapped child's potential.'" (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012))).

New York State "has assigned responsibility for developing appropriate IEPs to local Committees on Special Education ('CSE'), the members of which are appointed by school boards or the trustees of school districts." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir. 2007) (internal quotation marks and citation omitted).  The CSE is composed of several individuals, including the parents, the student's special education teacher, a school psychologist, a school district representative knowledgeable about the district's resources, a school physician, and a parent representative.  N.Y. Educ. Law § 4402(1)(b)(1)(a); *see R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012).  "The CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program." *R.E.*, 694 F.3d at 175.  The State must consider the parents' concerns when formulating the IEP and updating the IEP annually.  *See Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 156 (2d Cir. 2021) (first citing 34 C.F.R. § 300.324(a)(1)(ii) and then citing 20 U.S.C. § 1414(d)(4)(A)).  Finally, the school district "must also implement the IEP, which includes offering placement in a school that can fulfill the requirements set forth in the IEP." *S.K.*, 2020 WL 1244473, at *10 (quoting *D.C. ex rel. E.B. v. N.Y.C. Dep't of Educ.*, 950 F. Supp. 2d 494, 509 (S.D.N.Y. 2013)).

If a parent believes that an IEP does not provide his or her child a FAPE, the parent may unilaterally enroll the child in a private educational setting and seek reimbursement from the school district by filing a due process complaint.  *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009); *T.M. ex rel A.M.*, 752 F.3d at 152; *see also* 20 U.S.C. §§ 1412(a)(10)(C)(ii), 1415(b)(6), 1415(b)(7)(A); N.Y. Educ. Law § 4404(1).  The parent must then attend an impartial hearing before an IHO.  20 U.S.C. § 1415(f); N.Y. Educ. Law § 4404(1).  Either party aggrieved by the IHO's findings or decision may appeal to an SRO.  20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(2).  Finally, a party can challenge the SRO's decision by bringing a civil action in federal or state court.  20 U.S.C. § 1415(i)(2)(A); N.Y Educ. Law § 4404(3); *see also T.M. ex rel. A.M.*, 752 F.3d at 152.

## PROCEDURAL HISTORY

The Parents initiated this action by filing the operative complaint on August 10, 2021.  Dkt. No. 2.  The DOE filed an answer on November 5, 2021, Dkt. No. 12, and the Parents filed a motion for summary judgment on March 25, 2022, together with their Rule 56.1 statement and a memorandum of law in support of their motion, Dkt. Nos. 25–27.  The DOE filed a cross-motion for summary judgment, its responsive Rule 56.1 statement, and a memorandum of law in support of its cross motion on May 5, 2022.  Dkt. Nos. 31–33.  The DOE filed a reply to the Parents' motion for summary judgment on June 28, 2022.[7]  Dkt. No. 36.

---

[7] The Parents' reply memorandum of law and opposition papers were due on May 23, 2022.  *See* Dkt. No. 34.  Although the Parents apparently served their reply and opposition papers on the DOE on June 6, 2022, *see id.* at 2, the papers were never filed.  Because the Court has not received the Parents' opposition papers, it does not consider them in this motion.  *See Jenkins v. NYCHA*, 2022 WL 16555971, at *2 (S.D.N.Y. Oct. 11, 2022), *report and recommendation adopted*, 2022 WL 16555365 (S.D.N.Y. Oct. 31, 2022); *Jackson v. Goord*, 2004 WL 1774251, at *1 (S.D.N.Y. Aug. 9, 2004).

## LEGAL STANDARD

In an IDEA case, summary judgment "involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions." *R.E.*, 694 F.3d at 184 (quoting *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009)).  The district court's role, however, is "circumscribed"; "[w]hile the district court must base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *A.C.*, 553 F.3d at 171 (alterations accepted) (internal quotation marks and citations omitted). This review "requires a more critical appraisal of the agency determination than clear-error review, but nevertheless falls well short of complete *de novo* review." *M.H.*, 685 F.3d at 244 (cleaned up).  It "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206; *see also Gagliardo*, 489 F.3d at 112–13.

"When an IHO and SRO reach conflicting conclusions, '[courts must] defer to the final decision of the state authorities,' that is, the SRO's decision unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E.*, 694 F.3d at 189 (quoting *A.C.*, 553 F.3d at 171).  "[W]here the SRO and IHO agree, deference to the conclusions of the administrators on [the] issue[s] is particularly appropriate." *S.K.*, 2020 WL 1244473, at *11 (quoting *C.W. v. City Sch. Dist. of New York*, 171 F. Supp. 3d 126, 131 (S.D.N.Y. 2016)).  The degree of deference, however, depends on both the quality of the decisions and the nature of issue at hand.  "Deference is particularly appropriate when the state officer's review 'has been thorough and careful.'" *R.E.*, 694 F.3d at 184 (quoting *Walczak*, 142 F.3d at 129).  "[C]ourts must look to the factors that 'normally determine whether

any particular judgment is persuasive, for example, whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court.'" *Id.* at 189 (quoting *M.H.*, 685 F.3d at 244).  Because of the district court's lack of institutional competence with respect to policy determinations, more deference is also appropriate when reviewing the SRO's determination of the substantive adequacy of an IEP and appropriate educational methodologies than on determinations about the propriety of the procedures by which an IEP was developed.  *See M.H.*, 685 F.3d at 243.  Finally, on legal issues, "courts owe no deference to state hearing officers."  *C.S.*, 990 F.3d at 165.

## DISCUSSION

Under the *Burlington/Carter* test, parents are only entitled to reimbursement of private-school tuition if "(1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement was appropriate, and (3) equitable considerations favor reimbursement."  *T.M.*, 752 F.3d at 152; *see also Carter*, 510 U.S. at 12–16 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373–74 (1985).  To determine whether the IEP complies with the IDEA and the district has provided the student with a FAPE—the first prong of the *Burlington/Carter* test—courts must "make a two-part inquiry . . . first, procedural, and second, substantive."  *A.M. v. New York City Dep't of Educ.*, 845 F.3d 523, 534 (2d Cir. 2017) (internal quotations marks and citation omitted).  "At the first step, courts examine whether there were procedural violations of the IDEA, namely, whether the state has complied with the procedures set forth in the IDEA."  *R.E.*, 694 F.3d at 190 (internal quotation marks and citation omitted).  At the second step, courts must determine whether the IEP was substantively adequate, *A.M.*, 845 F.3d at 541—that is, whether the "IEP [is] reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).  If a court determines that the

challenged IEP was procedurally and substantively adequate, the court need not consider the last two prongs of the *Burlington/Carter* test. *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000) ("If the challenged IEP was adequate, the state has satisfied its obligations under the IDEA and the necessary inquiry is at an end."); *see also M.W. ex rel. S.W. v. New York City Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013); *M.T. v. New York City Dep't of Educ.*, 165 F. Supp. 3d 106, 121 (S.D.N.Y. 2016).

The Parents argue that the DOE failed to offer E.P. a FAPE for the 2019-2020 school year because the DOE did not comply with the IDEA's procedural requirements when developing E.P.'s IEP and because E.P.'s IEP was substantively inadequate. Dkt. No. 27 at 15–27. The Parents further contend that iBRAIN was an appropriate placement for E.P. under the second prong of the *Burlington/Carter* test, *id.* at 27–30, and that the equities favor Plaintiffs' claim for reimbursement, *id.* at 31–33. The DOE counters that any procedural deficiencies in the development of E.P.'s IEP did not arise to the denial of a FAPE and that the IEP was substantively appropriate. Dkt. No. 33 at 8–14. With respect to the other prongs of the *Burlington/Carter* test, the DOE argues that if the Court finds that the DOE denied E.P. a FAPE, the Court should remand to the SRO to consider whether iBRAIN was an appropriate placement and whether the equities favor reimbursement. *Id.* at 15–17.

The Court finds that the procedural deficiencies in the development of the IEP did not arise to the level of a denial of a FAPE and the SRO did not err in finding that the IEP was substantively adequate.

## I.  Procedural Challenges

"The initial procedural inquiry is no mere formality. It acts as a safeguard against arbitrary or erroneous decisionmaking." *M.H.*, 685 F.3d at 217. While "even minor violations may cumulatively result in a denial of a FAPE," *R.E.*, 694 F.3d at 191, "[r]elief is warranted only

if the alleged procedural inadequacies '(I) impeded the child's right to a [FAPE];

(II) significantly impeded the parents' opportunity to participate in the decisionmaking process

regarding the provision of [a FAPE] to the parents' child; or (III) caused a deprivation of

educational benefits,'" *M.H.*, 685 F.3d at 217 (quoting 20 U.S.C. § 1415(f)(3)(E)(ii)).   The

Parents argue that (1) the DOE failed to issue proper meeting notices and prior written notices

and to schedule the IEP meeting within the appropriate timeframe and at a mutually agreeable

time; (2) the DOE school physician failed to attend the CSE meeting in person; (3) the July 2019

IEP was created without parental involvement and appropriate notices; and (4) the DOE failed to

conduct the necessary evaluations of E.P.  The Court addresses each alleged procedural defect in

turn before analyzing the cumulative effect of any procedural deficiencies.

### A.     Meeting Notices

The Parents appear to be making several arguments related to deficiencies in the

scheduling of the June 2019 CSE meeting.  First, the Parents argue that the CSE meeting was

held four months "beyond the mandatory" February 12, 2019 date, thus "depriv[ing] E.P. of a

FAPE."  Dkt. No. 33 at 17.  Next, the Parents argue that the March 27, 2019 meeting notice was

deficient because it did not contain the names of the parent member and the DOE physician and

that the February 4, 2019 and April 23, 2019 meeting notices lacked required prior written

notice.  *Id.* at 9, 17.  Finally, the Parents argue that "the DOE made no attempt to schedule the

IEP meeting at a mutually agreed upon time and place" as required by the IDEA.  Dkt. No. 27 at

18.  The DOE counters that the meeting notices contained all the required information and the

DOE endeavored to accommodate the Parents' schedules.  Dkt. No. 33 at 9.

The IDEA requires that a child's IEP be reviewed "periodically, but not less frequently

than annually."  20 U.S.C. § 1414(d)(4)(A)(i); *see also Walczak*, 142 F.3d at 122.  The

February 4, 2019 meeting notice indicates that the "IEP Meeting must be held no later than . . .

02/12/2019." R-937.  The Parents appear to be arguing that holding the IEP meeting in June of 2019 violated the annual review requirement of the IDEA.  As an initial matter, the Parents are precluded from asserting this argument at this stage.  "An important feature of the IDEA is that it contains a statutory 30-day resolution period once a 'due process complaint' is filed." *R.E.*, 694 F.3d at 187 (citing 20 U.S.C. § 1415(f)(1)(B)).  The filing of a due process complaint provides the school district with an opportunity to address the claimed deficiencies without penalty. *B.M. v. New York City Dep't of Educ.*, 569 F. App'x 57, 58 (2d Cir. 2014).  Because "[t]he Department cannot be expected to resolve problems of which it is unaware . . . [t]he parents must state all of the alleged deficiencies in the IEP in their initial due process complaint in order for the resolution period to function." *C.F. ex rel. R.F.*, 746 F.3d at 77–78 (internal quotation marks and citation omitted).  Consequently, "[t]he party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [complaint], unless the other party agrees otherwise." *Id.* at 78 (quoting 20 U.S.C. § 1415(f)(3)(B)).  Courts in this Circuit have held that federal courts are similarly precluded from reviewing issues not raised in the DPC.  *See id.* (collecting cases).

However, "the waiver rule is not to be mechanically applied." *C.F. ex rel. R.F.*, 746 F.3d at 78.  "Arguments not directly raised in a DPC need not necessarily be foreclosed so long as: (1) the DPC 'provided fair notice to the Department of' the argument at issue; (2) 'both the IHO and SRO reached the issue on the merits, giving [the federal court] a record for review;' or (3) the argument goes to 'the heart of this dispute.'" *Y.A. v. New York City Dep't of Educ.*, 2016 WL 5811843, at *10 (S.D.N.Y. Sept. 21, 2016) (quoting *C.F. ex rel. R.F.*, 746 F.3d at 78).  *But see B.P. v. New York City Dep't of Educ.*, 634 F. App'x 845, 850 (2d Cir. 2015) (holding that "the issue deemed waived" cannot be "completely absent from the due process complaint").

Here, the Parents did not raise the delay in holding the IEP meeting in their DPC and did not give the DOE notice of this procedural violation. Neither the IHO nor the SRO reached the issue and the argument does not go to the heart of the dispute. The Parents are thus precluded from raising this argument here.

Even if the Parents did not waive this claim, the delay in holding the CSE meeting did not result in a denial of a FAPE. The SRO did not address this particular argument in its opinion, and neither the Parents' briefing nor the record elucidates why the meeting notice required that the meeting be held on or before February 2, 2019 and whether that requirement was related to the IDEA's annual-review requirement. In fact, there is some indication in the record that the original date of the meeting, March 8, 2019, was within the statutory deadline; according to the IHO's findings of fact and conclusions of law for E.P.'s IEP for the 2018-2019 school year, the previous IEP meeting was held on March 14, 2018. *See* R-1056. Any delay past the original March 8 meeting date was for the convenience of the Parents, who twice requested that the meeting be rescheduled. *See* R-1133 (February 19, 2019 request); R-1134 (April 4, 2019 request). Even if arguably a statutory violation, this delay would not represent a denial of a FAPE. *See S.Y. v. New York City Dep't of Educ.*, 210 F. Supp. 3d 556, 567 (S.D.N.Y. 2016) (deferring to SRO's conclusion that over two-month delay in conducting annual review did not alone constitute a denial of a FAPE).

The Parents also claim that the meeting notices sent by the DOE were deficient. Under New York law, the CSE meeting notice must "inform the parent(s) of the purpose, date, time, and location of the meeting and the name and title of those persons who will be in attendance at the meeting." 8 N.Y.C.R.R. § 200.5(c)(2); *see also* 34 C.F.R. § 300.322(b)(1)(i) (establishing similar notice requirements, though not explicitly requiring that those who will be in attendance

be identified by name).  By letter dated February 19, 2019, the Parents requested that a DOE

school physician and parent member attend the meeting, as they were permitted to do by New

York regulations.  Pl. 56.1 ¶ 15; DOE 56.1 ¶ 15; *see* 8 N.Y.C.R.R. § 200.5(c)(2)(iv).  However,

the March 27, 2019 meeting notice did not contain the names of either the school physician or

parent advocate, an error that was corrected, after the Parents alerted the DOE to the discrepancy,

in the April 23, 2019 meeting notice.  *See* Pl. 56.1 ¶¶ 16–17; DOE 56.1 ¶¶ 16–17, 55–57.  The

SRO concluded that the procedural violations in the meeting notice "do not rise to the level of

denial of FAPE."  SRO Dec. 10.  The Court agrees.  Although perhaps a "technical deficiency"

in the meeting notice, this deficiency was corrected before the meeting and the Parents "have not

identified how [the deficiency] impacted either their [son's] right to a FAPE or their right to

participate in the process of formulating [his] IEP."  *Carrillo v. Carranza*, 2021 WL 4137663, at

*14 (S.D.N.Y. Sept. 10, 2021).

The Parents further argue that the DOE failed to provide prior written notices before

sending the February 4, 2019 and April 23, 2019 meeting notices "in violation of IDEA

regulations."  Dkt. No. 27 at 17.  This argument appears to misconstrue the law.  The IDEA

requires a parent be provided with prior written notice whenever the district "proposes to initiate

or change[,] or refuses to initiate or change, the identification, evaluation, or educational

placement of the child, or the provision of a free appropriate public education to the child."

20 U.S.C. § 1415(b)(3)(A); 34 C.F.R. § 300.503.  The prior written notice must include, *inter*

*alia*, "a description of the action proposed or refused by the agency," an explanation for the

action proposed or refused, and a "description of the other options considered by the IEP Team."

20 U.S.C. § 1415(c)(1)(A), (B), (E); *accord* N.Y.C.R.R. § 200.5(a)(3).  The SRO and IHO did

not specifically address this argument, beyond concluding that any deficiencies in the prior

written notices did not amount to a denial of a FAPE.  *See* SRO Dec. 10; IHO Dec. 6.  As such,

the SRO's and IHO's conclusions are not entitled to deference.  *See S.Y.*, 210 F. Supp. 3d at 572

(concluding that SRO conclusion with regard to prior written notice was not worthy of deference

because, *inter alia*, it was articulated "without analysis").  However, the DOE was not required

to provide prior written notices before providing the meeting notices.  By its terms, a prior

written notice need only be provided when the agency takes or refuses to take an action with

respect to the educational placement or FAPE of a child.  In contrast, the meeting notices were

sent to schedule a meeting "related to the development or review of a student's IEP, or the

provision of a free appropriate public education to the student."  N.Y.C.R.R. § 200.5(c)(1).

Stated differently, the meeting notice was not itself an action with respect to E.P.'s FAPE; rather,

it was notice of a meeting at which the CSE might explore taking such an action.  Thus, contrary

to the Parents' assertion, the DOE did not err procedurally by failing to provide prior written

notices before sending the meeting notices.[8]

Finally, the Parents argue that their ability to participate in the CSE meeting was

constrained because "the DOE made no attempt to schedule the IEP meeting at a mutually

agreed upon time and place," as required by the IDEA.  Dkt. No. 27 at 18.  By law, the DOE

must attempt to schedule the CSE meeting "at a mutually agreed on time and place."  34 C.F.R.

§ 300.322(a)(2); *accord* 8 N.Y.C.R.R. § 200.3(a)(1)(ii).  The SRO found that the DOE did just

that—the "record shows that the district attempted to accommodate the parent by soliciting

preferred dates or times, cancelling several scheduled CSE meetings, responding to the parent's

concerns, and rescheduling the meeting."  SRO Dec. 10 (citations omitted).  Here, the DOE

---

[8] The Parents do not dispute that the DOE timely provided the Parents with a prior written notice. of its recommendation that E.P. be placed in an NYC DOE specialized school, which was dated June 17, 2019.  *See* Pl. 56.1 ¶ 26; DOE 56.1 ¶ 26; *see also* R-982–85.

rescheduled the meeting twice and accommodated the Parents' request that the meeting occur on a weekday between 9:00 a.m. and 11:00 a.m.  *See* SRO Dec. 3–4.  In fact, the Parents attended the meeting on June 7, 2019, which was held at 9:00 a.m., in compliance with their request. SRO Dec. 11.  Thus, the DOE fulfilled its procedural obligations to schedule the IEP meeting at a mutually agreed time.  *See Neske v. Porter*, 2022 WL 3290561, at *5 (S.D.N.Y. Aug. 11, 2022), *reconsideration denied*, 2022 WL 16578963 (S.D.N.Y. Nov. 1, 2022) (finding no procedural violation when CSE proceeded without child's parents because the "record clearly demonstrates that the CSE labored to" find an agreed-on time and place); *Mr. "M" ex rel. "K.M." v. Ridgefield Bd. of Educ.*, 2007 WL 987483, at *6 (D. Conn. Mar. 30, 2007) (finding violation where "the record reflects no effort at all by the Board to negotiate a mutually agreeable time for the meeting, despite the parents' express and timely request for further discussion").

In sum, the Court finds that the only procedural deficiency related to the meeting notices not waived by the Parents was the DOE's failure to include the names of the DOE school physician and the parent member on the March 27, 2019 meeting notice, which was subsequently corrected in the operative April 23, 2019 meeting notice.

### B.   DOE School Physician's Remote Attendance

The Parents next argue that the DOE school physician's participation by telephone resulted in a denial of a FAPE.[9]  Dkt. No. 27 at 18–19.  Under New York law, each member of

---

[9] Notably, the Parents do not argue that their choice to leave the CSE meeting after approximately 30 minutes because the CSE refused their request to reconvene with all members present in person resulted in a denial of a FAPE.  *See* SRO Dec. 4.  The Court thus need not consider whether and how the Parents' decision to leave the meeting affects the procedural adequacy of the IEP.  *But see C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014) ("Important to the equitable consideration [the third prong of the *Burlington/Carter* test] is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA.").

the CSE must attend full committee meetings.  *See* 8 N.Y.C.R.R. § 200.3(f).  Their attendance

must be in person, unless the DOE and the parents "agree to use alternative means of

participation, such as video conferences or conference telephone calls."  *Id.* § 200.5(d)(7).

Further, a parent can request that a school physician become a member of the CSE, whose in-

person attendance would be required under New York regulations.  *Id.* § 200.3(a)(vii).  Here,

neither party contests that the Parents made a timely request for a DOE school physician to be a

member of the CSE and attend the meeting in person.  *See* Pl. 56.1 ¶¶ 16–17; DOE 56.1 ¶¶ 16–

17.  Nor is there any dispute that the Parents never agreed to permit the school physician to

attend the meeting telephonically; to the contrary, the Parents explicitly requested that the

physician attend the meeting in person.  *See* SRO Dec. 11; Pl. 56.1 ¶¶ 15–16; DOE 56.1 ¶¶ 15–

16.  However, the IHO found that the physician's participation by telephone "did not limit the

physician's ability to review the student's educational records and offer an opinion on

placement."  IHO Dec. 7.  The SRO agreed, holding that "[w]hile the absence of parental

agreement that the district physician attend via telephone, instead of in person[,] may be a

technical violation of state procedures, it does not rise to the level of a denial of a FAPE

because . . . the physician attending via telephone instead of in person did not preclude the

parents from participating in the development of the 2019-20 IEP."  SRO Dec. 11.

The Parents point to nothing in the record that suggests the school physician's

participation by telephone impeded the Parents' opportunity to participate in the IEP meeting or

otherwise denied E.P. a FAPE.  The Parents have thus offered no reason for this Court to disturb

the conclusions of the IHO and SRO that the physician's telephonic participation, though a

procedural error, does not require relief.  *See S.A. ex rel. M.A.K. v. New York City Dep't of

Educ.*, 2014 WL 1311761, at *9 (E.D.N.Y. Mar. 30, 2014) ("[C]ourts [in this Circuit] have

repeatedly found no IDEA violation where a CSE member participated telephonically in an IEP

meeting.") (collecting cases).

### C.     July 2019 IEP

The Parents next note that the July 2019 IEP was created without sending required

meeting notices or input from the Parents, a "blatant disregard of due process."  Dkt. No. 27 at

19.  The Parents allege that the rationale advanced by the DOE for creating the second IEP—to

accommodate the Parents' special transportation services, which the DOE was unable to include

earlier because the Parents had not submitted the required HIPAA form, *see* Dkt. No. 33 at 11—

was "fabricated" to "cover their tracks" for failing to include nursing services in the June 2019

IEP.  Dkt. No. 27 at 19–20.  Finally, the Parents argue that the July 2019 IEP represents "an

absolute denial of a FAPE," because it was submitted after the start of the extended school year.

*Id.* at 20.  The SRO rejected this argument, reasoning that the July 2019 "IEP is not relevant as

the [P]arents had already rejected the public programming [and] did not avail themselves of the

services offered by the district."  SRO Dec. 6 n.5.

The Court agrees with the SRO, though it does not fully adopt the SRO's reasoning.[10]

The Second Circuit's rationale in *Board of Education of Yorktown Center School District v. C.S.*

---

[10] It is an open question whether, as the DOE argues, the Parents waived their ability to make this argument because it was not contained in the DPC.  *See* Dkt. No. 33 at 10.  The Parents filed their DPC on July 8, 2019, *see* Pl. 56.1 ¶ 31; DOE 56.1 ¶ 31, *before* the July 2019 IEP was issued.  The DOE suggests that the Parents could have amended their DPC to incorporate this new information.  *See* Dkt. No. 33 at 11.  However, a parent cannot amend a due process complaint as a matter of right; the parent must either receive permission in writing to amend the DPC from the opposing party or must seek leave from the hearing officer.  *See* 20 U.S.C. § 1415(c)(E)(i); 8 N.Y.C.R.R. § 300.508(d)(3).  There thus is at least a facially reasonable argument that can be made that claims are not waived if they come to light after the DPC is filed. The Court need not address this question because it finds that the Parents' argument fails on the merits.  *But see C.H. v. Goshen Cent. Sch. Dist.*, 2013 WL 1285387, at *11 (S.D.N.Y. Mar. 28, 2013) (concluding that, although the IEP was issued "after the DPC was filed," "Plaintiff had ample time between the filing of the DPC and the conclusion of the impartial hearing to amend the DPC," and the court thus could consider those issues waived).

is instructive. There, the court examined whether a school district could unilaterally amend the original IEP to cure a deficiency identified by a parent in a DPC during the statutory thirty-day resolution period. 990 F.3d at 154–55. The court held that it could not. The court reasoned that this conclusion was consistent with the text and structure of the IDEA and protective of parents. *Id.* at 169–73. As relevant here, the court concluded that the text of the IDEA specifically contemplates "a due process hearing that examines whether the IEP provided the child with a FAPE *before* the parents' enrollment of their child in a private school—and that does not examine the IEP as amended following the parents' due process complaint." *Id.* at 170 (emphasis in original) (examining language of 20 U.S.C. § 1412(a)(10)(C)(ii)); *see also id.* at 169 ("Nowhere does the statute provide that school districts may act without the parents' agreement to amend the IEP during the resolution period, much less rely on a new IEP in the due process hearing to argue that the student was provided a FAPE."). The court also reasoned that this rule was consistent with the purpose and the structure of the IDEA. At the time parents decide whether to unilaterally place their child in a private school and seek tuition reimbursement, they are doing so based on the information (*i.e.*, the operative IEP) before them. *Id.* at 172. Permitting the school district to retroactively amend an IEP would incentivize the district to amend the IEP *after* the parent had elected to enroll a child in private school, "giv[ing] IDEA procedures a life of their own, wholly divorced from their intended meaning and of little use to parents, courts, and school districts alike." *Id.* at 172–73. A conclusion to the contrary, "would undermine the parents' right to rely on the IEP as-written at the time they decided to place [their child] in a different school and to file a reimbursement action." *Id.* at 173. *See also R.E.*, 694 F.3d at 186 ("In order for this system to function properly, parents must have sufficient

25

information about the IEP to make an informed decision as to its adequacy prior to making a placement decision.").

By this same logic, the Parents are precluded from arguing that the issuance of the July 2019 IEP represents a procedural violation of the IDEA.  The CSE issued the June 2019 IEP as a result of the June 7, 2019 IEP meeting,[11] *see* R-953–81, and a school placement recommendation on June 17, 2019, *see* Pl. 56.1 ¶ 26; DOE 56.1 ¶ 26; *see also* R-982–85.  The Parents enrolled E.P. at iBRAIN on or around July 2, 2019.  Pl. 56.1 ¶¶ 27–29 (stating that the "new extended school year began [on] or about July 2, 2019" and that the Parents re-enrolled E.P. in iBRAIN for the 2019-2020 school year in July 2019); DOE 56.1 ¶¶ 27–29.  Thus, at the time the Parents enrolled E.P. at iBRAIN, they did so based on the information in the June 2019 IEP and the corresponding school placement recommendation.  Thus, the state due process hearing—and subsequent federal court review of the hearing—must only examine the adequacy or lack thereof, of the June 2019 IEP, which contained the information relevant to the Parents' decision to enroll E.P. in iBRAIN.  Just as the DOE would not be permitted to amend an IEP after that decision is made and rely on the amended IEP during the review process, so too are the Parents precluded from arguing that deficiencies in the formulation of the July 2019 IEP denied E.P. a FAPE.[12]

### D.    Failure to Conduct Necessary Evaluations

Finally, the Parents argue that the CSE failed to conduct appropriate evaluations.[13]  Dkt. No. 27 at 26–27.  The SRO found that the Parents' "due process complaint notice did not include

---

[11] Contrary to the Parents' assertion, there was an IEP in place at the beginning of the 2019-2020 school year, the June 2019 IEP.  *See* Dkt. No. 27 at 20.  There thus the July 2019 IEP does not represent "an absolute denial of FAPE."  *Id.*

[12] The Parents can, of course, rely on any substantive deficiencies identified through the amendment of the June 2019 IEP, if those arguments are properly preserved, in their challenge to the substantive adequacy of the June 2019 IEP.

[13] The Parents argue that the failure to conduct appropriate evaluations is a substantive violation of the IDEA.  *See* Dkt. No. 27 at 26 (arguing that the failure to conduct proper evaluations

any allegations related to a failure of the district to evaluate the student" and deemed the Parents' argument waived.  SRO Dec. 9–10.  However, the SRO reviewed the Parents' claim "for the sake of argument" and concluded that "the evidence in the hearing record shows that the student was re-evaluated in February and March 2019, prior to convening the June 2019 CSE to develop the program for the 2019-[20]20 school year."  *Id.* at 10 n.7.  The Court finds that, although the Parents did not waive their argument, the record does not demonstrate that the CSE crafted the IEP without the necessary evaluative material.

The Second Circuit has instructed "that the waiver rule is not to be mechanically applied."  *C.F. ex rel. R.F.*, 746 F.3d at 78.  So long as the plaintiffs provide "fair notice to the Department of their claim," a court should deem that claim properly raised.  *Id.*  In *C.F. ex rel R.F. v. New York City Department of Education*, the SRO held that the parents' argument with respect to their child's school placement was foreclosed because it was not raised in the DPC. *Id.* at 76.  The Circuit found that the SRO erred in concluding that this argument was waived. The DPC contained an allegation that a "specific and identifiable placement was not timely and properly developed and determined at the time of the IEP meeting."  *Id.* at 78.  The Circuit held that "[t]he allegation that the Department had failed to provide a specific and identifiable placement in a timely manner surely encompasses the claim that the placement was not timely

---

renders the 2019-2020 subsequently inadequate).  However, courts in this Circuit correctly analyze the adequacy of the IDEA's required evaluations as part of the procedural "checklist of requirements specified by state [and federal] regulations."  *R.E.*, 694 F.3d at 191; *see M.H.*, 685 F.3d at 249 (analyzing whether the IEP provided sufficient evaluative procedures as a potential procedural violation); *Mr. P v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 749 (2d Cir. 2018) (analyzing adequacy of evaluations under procedural rubric); *S.Y.*, 210 F. Supp. 3d at 567 (analyzing failure to conduct evaluations within required time as a potential procedural violation); *Scott ex rel. C.S. v. New York City Dep't of Educ.*, 6 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) (analyzing failure to conduct evaluations as a procedural violation).  As such, the Court analyzes whether the failure to conduct necessary evaluations constituted a procedural, as opposed to a substantive, violation of the IDEA.

because the designated school site was unavailable." *Id.* at 78.  Here, the Parents' DPC alleged

that "the IEP was not the product of any individualized assessment of all [of E.P.'s] needs."

R-1047.  This statement was adequate to put the DOE on notice that the Parents intended to

make a procedural argument about the DOE's failure to conduct the mandated evaluations of

E.P.  *See, e.g.*, 20 U.S.C. § 1414(b)(2) (referring to "assessment tools" and "assessment" as part

of the statutorily mandated evaluation process).  Additionally, the SRO reached this issue, even

if in the alternative, giving the Court a record on which to base its decision.  *See C.F. ex rel.*

*R.F.*, 746 F.3d at 78.  The merits, however, do not favor the Parents.

The IDEA's "mandatory initial evaluations and reevaluations are purposefully

comprehensive."  *D.S. By & Through M.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 162 (2d Cir.

2020).  Section 1414 of the IDEA requires that these evaluations assess "the child in ***all*** areas of

their disability."  *Id.* (emphasis in original) (referencing 20 U.S.C. § 1414); *see also* 34 C.F.R.

§ 300.304(c)(4); 8 N.Y.C.R.R. § 200.4(b)(6)(vii) ("School districts shall ensure that . . . the

student is assessed in all areas related to the suspected disability, including, where appropriate,

health, vision, hearing, social and emotional status, general intelligence, academic performance,

vocational skills, communicative status and motor abilities.").  These evaluations must be

"sufficiently comprehensive to identify all of the child's special education and related services

needs, whether or not commonly linked to the disability category in which the child has been

classified."  34 C.F.R. § 300.304(c)(6); *see also* 8 N.Y.C.R.R. § 200.4(b)(6)(ix).

The Parents argue, in a conclusory fashion, that "[u]nfortunately for E.P., this [level of

evaluation] did not occur."  Dkt. No. 27 at 26.  The SRO concluded that E.P. was evaluated prior

to the 2019-2020 CSE meeting.  *See* SRO Dec. 10 n.7.  And the record supports that these

evaluations were sufficient to craft E.P.'s June 2019 IEP.  The prior written notice for E.P.'s

recommended school placement reflects that the CSE considered five evaluations in its placement decision, all of which were conducted between February and May of 2019: a Social History Update, a Psychoeducational evaluation, Classroom Observations, a Vineland 3 evaluation, and a Teacher Report.  *See* R-983.  Thomason acknowledged that the CSE considered this evaluative material in a declaration she submitted in connection with the due process hearing, stating that "[o]ver the past year, our family has given consent concerning requested assessments, evaluations and classroom observations of [E.P.] that the New York City Department of Education has requested."  R-1162.  The only indication in the record that specific evaluations were not conducted comes from the Parents' request, in their February 19, 2019 letter, that "the CSE consider a placement in a non-public school and conduct the necessary evaluations for such consideration and any other evaluations prior to scheduling the meeting." R-1133.  However, the IDEA only requires that additional assessments "be conducted if found necessary to fill in gaps in the initial review of existing evaluation data."  *S.F. v. New York City Dep't of Educ.*, 2011 WL 5419847, at *10 (S.D.N.Y. Nov. 9, 2011) (citing 20 U.S.C. § 1414(c)(2)).  The Parents have pointed to nothing in the record that would suggest that these additional evaluations were necessary to the CSE's determinations.  The Court thus finds that there was no procedural error related to the evaluation of E.P. in relation to the June 2019 CSE meeting.  *See T.C. v. New York City Dep't of Educ.*, 2016 WL 4449791, at *18 (S.D.N.Y. Aug. 24, 2016); *S.F.*, 2011 WL 5419847, at *10 (finding no procedural error where "there is no evidence in the record that any CSE participant believed that [the available] information needed to be supplemented by additional evaluations").

### E.    Cumulative Effect of Procedural Violations

The Parents suggest that the "cumulative result of all the procedural violations" denied E.P. a FAPE.  Dkt. No. 27 at 16.  The Second Circuit has emphasized "that even minor violations

may cumulatively result in a denial of a FAPE." *R.E.*, 694 F.3d at 191.  The cumulative effect of the violations, however, must "display a pattern of indifference to the procedural requirements of the IDEA and carelessness in formulating [a child's] IEP[]." *L.O. v. New York City Dep't of Educ.*, 822 F.3d 95, 124 (2d Cir. 2016).  The IHO did not address the cumulative effect of the procedural violations.  Though the SRO acknowledged this standard, *see* SRO Dec. 8, he also failed to expressly address the DOE's procedural violations' cumulative effect.  The IHO and SHO both erred in failing to do so.  *See Scott ex rel. C.S.*, 6 F. Supp. 3d at 439 ("The IHO and SRO erred in neglecting to address this issue.").  Still, the SRO's analysis with respect to the procedural violations is instructive.

The SRO found, and the Court concurs, that the DOE committed two procedural violations, not waived by the Parents, in formulating E.P.'s IEP.  *See C.M. v. New York City Dep't of Educ.*, 2017 WL 607579, at *18 (S.D.N.Y. Feb. 14, 2017) ("The Court must consider only the cumulative effect of the determined, rather than the alleged, procedural violations.").  First, the DOE failed to list the names of the DOE school physician and parent member on the March 27, 2019 meeting notice, an error that was identified by the Parents and corrected by the DOE in the April 23, 2019 meeting notice.  Second, the DOE permitted the DOE school physician to attend the CSE meeting telephonically without the Parents' permission.  The SRO concluded that each of these violations were relatively innocuous and that neither significantly impeded the Parents' ability to participate in the IEP process.  In fact, the SRO found that it was the Parents, and not the DOE, "who conducted themselves in a manner that limited their own participation in the meeting."  SRO Dec. 11.  The Court agrees that the violations were innocuous and further finds that the two procedural violations, taken together, did not result in the denial of a FAPE and did not significantly impede the Parents' participation in the IEP

process.[14]  *Cf. L.O.*, 822 F.3d at 124 (finding that four procedural violations present in each of three IEPs, three of which were "serious errors," and additional "isolated deficiencies in the IEPs" cumulatively deprived plaintiff's child of a FAPE);*S.Y.*, 210 F. Supp. 3d at 575 (finding that "nine distinct procedural violations, several innocuous but some quite serious" cumulatively represented a denial of a FAPE).

## II.   Substantive Challenges

"[A] school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *Endrew F. ex rel. Joseph F.*, 580 U.S. at 399. The Supreme Court has emphasized that the touchstone of the substantive evaluation of an IEP is "whether the IEP is *reasonable*, not whether the court regards it as ideal."  *Id.* (emphasis in original); *see also Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1583 (D.C. Cir. 1984) (Ginsburg, J.) (describing how the EAHCA, the predecessor to the IDEA, "does not secure the *best* education money can buy; it calls upon government, more modestly, to provide an *appropriate* education for each child").  Thus, "a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is 'likely to produce progress, not regression,' and if the IEP affords the student with an opportunity greater than mere 'trivial advancement.'"  *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005) (quoting *Walczak*, 142 F.3d at 130).  "Unlike procedural violations, which ordinarily will not result in a FAPE denial, '[s]ubstantive inadequacy automatically entitles the parents to reimbursement.'"  *A.M.*, 845 F.3d at 541 (quoting *R.E.*, 694 F.3d at 190).

---

[14] Even considering the waived procedural violation—the potential several month delay in E.P.'s required annual review—the Court finds that the cumulative effect of these violations did not result in the denial of a FAPE.  The waived violation is somewhat more serious than the others because of the importance of timely reviews, but the consideration of this violation does not suggest "a pattern of indifference . . . and carelessness."  *L.O.*, 822 F.3d at 124.

The Parents assert four challenges to the substantive adequacy of E.P.'s IEP: (1) the DOE did not recommend an appropriate class grouping for E.P., Dkt. No. 27 at 20–22; (2) the assigned school was incapable of implementing E.P.'s IEP because it could not support speech therapy sessions that were sixty minutes in length, *id.* at 24–25; (3) the IEP's recommendation of thirty-minute long occupational and physical therapy sessions was insufficient to support E.P.'s progress, *id.* at 23–24; and (4) the DOE failed to recommend an IEP with appropriate goals because the goals were premised on sixty-minute long occupational and physical therapy sessions, not the thirty-minute long sessions prescribed by the IEP, *id.* at 25–26.

### A.      Appropriate Class Grouping

The Parents argue that the "proposed class grouping clearly failed to comply with the regulatory requirements and was not appropriate for E.P." because the students in the classrooms available for E.P. had a "disparate and wide variance of academic characteristics, social development, physical development and management needs." *Id.* at 21.  The SRO found that the Parents waived this argument by not asserting it in its DPC.  SRO Dec. 10.  The Court agrees.

As discussed, a parent is precluded from raising claims in the due process hearing, and federal courts are precluded from reviewing issues that were not first raised in the DPC.  *See supra*, pp. 17–19.  The Parents' DPC makes no reference of the proposed class grouping and thus the argument is waived.  The Parents advance two arguments as to why their claim with respect to E.P.'s class grouping has not been waived.  First, the Parents assert that the DPC alleges that the DOE "failed to recommend or offer a FAPE for E.P.," which "was the focal point of the due process hearing." Dkt. No. 27 at 21.  Because an inappropriate class grouping would represent a denial of a FAPE, the Parents appear to be arguing that the DPC does at least implicitly raise the claim that E.P. was placed in an inappropriate class grouping.  *See id.*  This argument proves too much.  If it were accepted, it would undermine the very purpose of the DPC.  The DPC triggers a

thirty-day resolution period, during which the school district can correct any deficiencies without penalty. *R.E.*, 694 F.3d at 187.  The resolution period undergirds the requirements that issues must be raised in the DPC in order to be preserved for review.  "The Department cannot be expected to resolve problems of which it is unaware.  Accordingly, '[t]he parents must state all of the alleged deficiencies in the IEP in their initial due process complaint in order for the resolution period to function.'"  *C.F. ex rel. R.F.*, 746 F.3d at 77–78 (quoting *R.E.*, 694 F.3d at 187 n.4.).  "This rule . . . bars issues ostensibly encompassed in a 'general statement lack[ing] the specificity necessary to notify DOE of plaintiffs' intent to pursue administratively every issue.'"  *Davis*, 2021 WL 964820, at *6 (alteration in original) (quoting *B.P.*, 634 F. App'x at 849 n.6).  The Parents are thus implicitly arguing that asserting that the DOE has denied E.P. a FAPE is sufficiently specific a statement to have put the DOE on notice that E.P.'s proposed class grouping is inappropriate and to have given the DOE an opportunity to correct this potential error.  However, *every* demonstrated substantive inadequacy in an IEP deprives the child of a FAPE.  *See A.M.*, 845 F.3d at 541.  Thus, this argument, taken to its logical conclusion, suggests that the mere assertion in the DPC that a child was denied a FAPE would be sufficient to preserve every potential substantive argument.  And the relevant department of education would be left with no guidance of which substantive violations to address during the resolution period, diminishing the value of this statutory feature of the IDEA almost entirely.  The Court thus rejects the Parents' argument that the mere assertion that E.P. was denied a FAPE was sufficient to preserve their argument with respect to his class grouping.

Second, the Parents argue that the DOE "opened the door" to the issue by allowing the Parents' attorney to cross examine a witness about E.P.'s class grouping.  Dkt. No. 27 at 21–22.  The Second Circuit has identified a narrow exception to the waiver rule: if the DOE opened the

door to an otherwise waived issue in the impartial hearing, then the parents would not be precluded from advancing the claim.[15]  *See M.H.*, 685 F.3d at 250–51.  "Courts have found that a party has 'opened the door' to an issue that wasn't raised in the original due process complaint if it raises the issue during the hearing and the issue comprises a large part of the testimony presented at the hearing."  *Bd. of Educ. of Mamaroneck Union Free Sch. Dist. v. A.D.*, 2017 WL 4466613, at *4 (S.D.N.Y. Oct. 5, 2017), *aff'd*, 739 F. App'x 79 (2d Cir. 2018).  In *M.H.*, for example, the DOE introduced the waived issue "first in its opening statement, and then in the questioning of its first witness" and "much of the testimony presented by both parties to the IHO related to the" waived issue.  *M.H.*, 685 F.3d at 250.

Under these principles, the DOE did not open the door to the issue of E.P.'s class grouping.  The SRO found that it was "the [Parents'] attorney who belatedly . . . attempted to broach the issue[] of . . . grouping during cross examination."  SRO Dec. 10 n.8 (citation omitted).  The SRO also found that the DOE "later briefly posed two questions that might have been related to the grouping of the student, [but] both were addressed in the context of the student's placement at iBrain, not the public school site."  *Id.* (citation omitted).  This level of engagement with the issue is insufficient to find that the DOE opened the door to the Parents' argument and the Parents have pointed the Court to nothing else in the record that would suggest otherwise.  *See B.M.*, 569 F. App'x at 59 (finding door not opened when "the District's only mention of the relevant [issue] at the hearing came during foundational questions, not in support

---

[15] Although somewhat unclear from the Second Circuit's opinion, the statutory grounding for this exception to the waiver rule appears to lie in Section 1415 of the IDEA.  That section provides: "The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [DPC], *unless the other party agrees otherwise*."  20 U.S.C. § 1415(f)(3)(B) (emphasis added); *see also* 8 N.Y.C.R.R. § 200.5(j)(1)(ii) (same).  By making the issue a focus of its case in chief, the department is implicitly agreeing to an expansion of the DPC.  *See Scott ex rel. C.S.*, 6 F. Supp. 3d at 439.

of an affirmative, substantive argument"); *Scott ex rel. C.S.*, 6 F. Supp. 3d at 439 (finding DOE did not open the door when it "only briefly addressed the issue in its redirect examination of its witness following Plaintiff's raising the issue on cross-examination"). Thus, the Court is precluded from reviewing this claim.

Even assuming that this claim were not waived, the Parents would be precluded from making this argument for an independent reason: grouping evidence is the kind of speculative evidence that is impermissible. In *R.E. v. New York City Department of Education*, the Second Circuit held, "[i]n determining the adequacy of an IEP, both parties are limited to discussing the placement and services specified in the written plan and therefore reasonably known to the parties at the time of the placement decision." 694 F.3d at 187; *see also id.* at 195 ("Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement."). The Second Circuit subsequently explained that, while it is "speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to the plan's mandates, it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." *M.O.*, 793 F.3d at 244. Because the class that a student may be placed in is speculative, "courts in this District have repeatedly rejected functional grouping claims like the ones Plaintiffs advance here." *B.M. v. Pleasantville Union Free Sch. Dist.*, 2021 WL 4392281, at *21 (S.D.N.Y. Sept. 24, 2021) (collecting cases); *see also J.C. v. New York City Dep't of Educ.*, 643 F. App'x 31, 33 (2d Cir. 2016) ("[G]rouping evidence is not the kind of non-speculative retrospective evidence that is permissible under *M.O.*"); *N.K. v. New York City Dep't of Educ.*, 2016 WL 590234, at *7 (S.D.N.Y. Feb. 11, 2016) ("Whether or not the [s]tudent is grouped in a class that is inappropriate for his IEP cannot be known at the time of the parent's placement decision.").

Admittedly, the Parents' attorney elicited evidence on cross examination that pulls this claim somewhat out of the realm of mere speculation.  While cross examining Heather Lee Burnett, the Unit Coordinator of the school where E.P. was offered a placement, the Parents' attorney elicited testimony about the other students who were taught during the 2019-2020 school year in the only two 8:1:1 classrooms where E.P. could have been placed.  *See* R-824–34. Thus, the Parents could argue that their claim was not speculative; to the contrary, the Parents might assert, the evidence they elicited went to the heart of whether the school had the *capability* to implement E.P.'s IEP with respect to an appropriate class grouping, not whether the school merely would have adhered to the IEP.  But Burnett's testimony was based on the students who were actually enrolled in the two classrooms in September of 2019.  There would be no way to know the composition of the student population *ex ante* and thus this testimony represents the kind of speculative evidence prohibited in this Circuit.  *See G.S. v. New York City Dep't of Educ.*, 2016 WL 5107039, at *15 (S.D.N.Y. Sept. 19, 2016) (rejecting functional grouping argument as speculative, although the parents based the argument "on testimony about the IEPs of the students in the prospective class").

Nor would the Parents prevail on the merits if this evidence were permitted.  New York regulations require that a student be placed in a class "based on the similarity of the individual needs of the students according to" academic achievement, social development, physical development, and management needs.  8 N.Y.C.R.R. § 200.6(h)(2).  However, "[u]niformity of needs . . . is not required."  *E.P. v. New York City Dep't of Educ.*, 2016 WL 3443647, at *6 (S.D.N.Y. June 10, 2016) (quoting *E.A.M. v. New York City Dep't of Educ.*, 2012 WL 4571794, at *10 (S.D.N.Y. Sept. 29, 2012)); *see also* 8 N.Y.C.R.R. § 200.6(a)(3)(iii), (iv) (explicitly providing that management needs and physical development of the students may vary).  The

Parents' argument that E.P. was not offered an adequate class grouping focuses on the differing physical development and management needs of the other potential students.  *See* Dkt. No. 27 at 21.  But the New York regulations make clear that a functional grouping is appropriate so long as, *inter alia*, (1) the student's management needs are met and do not detract from the learning opportunities of the other students and (2) the student "is provided appropriate opportunities to benefit" in spite of the physical differences.  8 N.Y.C.R.R. § 200.6(a)(3)(iii), (iv); *see also id.* § 200.6(a)(3)(iii) ("The physical needs of the student shall not be the sole basis for determining placement.").  The Parents have offered no objective evidence that the class grouping would have inhibited E.P.'s development or that of the other students in the class.

### B.     Ability To Provide Sixty-Minute Speech Therapy Sessions

The Parents next argue that the DOE's proposed school placement was inadequate because the school was incapable of implementing the IEP recommendation that E.P. receive sixty-minute speech therapy sessions.  Dkt. No. 27 at 24.  The Parents point to testimony from Burnett suggesting that the school's speech therapy sessions are thirty-minutes in length, and not sixty minutes.  *See id.* at 25 (quoting R-838).  The Parents thus conclude that the "DOE recommended school will not, and could not, implement the DOE's recommendation of 60-minute [speech language therapy] sessions."  *Id.*

Neither the SRO nor the IHO appears to have addressed this argument.  However, as discussed above, this is precisely the kind of speculative challenge that is prohibited.  "[T]he Second Circuit has distinguished between cognizable challenges to the school's 'ability,' 'capacity,' or 'capability' to implement the IEP, in contrast to mere '[s]peculation that the school district [would] not [have] adequately adhere[d] to the IEP' despite its ability to do so."  *G.S.*, 2016 WL 5107039, at *14 (collecting cases) (citations omitted).  Here, the Parents attempt to frame their argument in non-speculative terms by asserting that the school "*could not*[]"

implement the DOE's recommendation of 60-minute sessions."  Dkt. No. 27 at 25 (emphasis

added); *see Y.F., individually & on behalf of K.H., a minor, v. N.Y.C Dep't of Educ.*, 659 F.

App'x 3, 6 (2d Cir. 2016) (stating that "a non-speculative challenge" is one "to the ability of a

placement school to implement the IEP").  Their argument about the school's ability to

implement the sessions, however, was refuted by Burnett, who twice testified on redirect that the

school was capable of accommodating sixty-minute speech therapy sessions.  *See* R-850 ("The

school is able [to accommodate the longer sessions] because we have all permanent staff."); *see*

*also id.* ("The school would be able to accommodate" sixty-minute sessions).  Thus, there is no

question that the recommended placement had the *capacity* to provide the recommended

services, even if Burnett expressed some hesitancy about the school's willingness to do so, a fact

that the Parents concede in their supporting memorandum.  "Simply put," the Parents conclude,

"being ABLE to provide and being WILLING to provide are not the same.  While the DOE

school might be ABLE to provide the 60-minutes services, Ms. Burnett clearly testified that the

school is not WILLING to provide the 60-minute [speech language therapy] sessions."  Dkt.

No. 27 at 25.  Stripped of its non-speculative rhetoric, the Parents' argument boils down to a

purely speculative one: the school *would not* implement the IEP's recommendation of sixty-

minute speech therapy sessions, even though it had the ability to accommodate the sessions.

This kind of speculative argument is one that the Court is required to reject.  *See N.M. v. New*

*York City Dep't of Educ.*, 2016 WL 796857, at *8 (S.D.N.Y. Feb. 24, 2016) ("By its terms,

however, a claim based on what a school 'would not have' done—as opposed to a claim based

on what the school *could not* do—is speculative and barred under *R.E.* and *M.O.*" (emphasis in

original)).

C.      **Related Services**

The Parents' final two substantive challenges are intertwined.  First, the Parents argue

that the SRO erred in finding that the CSE's related services recommendations were adequate.

Dkt. No. 27 at 22–24.  The CSE recommended that E.P.'s occupational and physical therapy

sessions be conducted in thirty-minute increments five times per week, when E.P. had previously

received sixty-minute sessions at iBRAIN.  *Id.* at 22–23.  Relatedly, the Parents argue that the

SRO erred in finding that the IEP's goals were appropriate because they were based on the

iBRAIN IEP, which contemplated sixty-minute, and not thirty-minute, occupational and physical

therapy sessions.  *Id.* at 25.  The Court finds that the SRO did not err in finding that thirty-minute

occupational and physical therapy sessions and the IEP's related goals were appropriate.

The Parents contend that the SRO "disregard[ed] evidence clearly establishing E.P.'s

need for 60-minute related services sessions."  *Id.* at 23.  In particular, the Parents point to the

recommendation of E.P.'s physician that E.P. receive sixty-minute sessions, *id.* (citing R-1137),

and the testimony of Tiffany Semm, the director of special education at iBRAIN, *id.*  In

particular, Semm testified that "cutting [E.P.'s] session time would make it almost impossible for

him to meaningfully engage in therapeutic activities."  R-533.  Contrary to the Parents'

argument, the SRO explicitly considered this evidence.  The SRO referenced Semm's testimony

at length.  *See* SRO Dec. 18 (citing Tr. pp. 332–34, 336–38, 362–63).  But he also considered the

testimony of the district psychologist, who was the CSE chairperson of the June 2019 IEP.  *See*

*id.* at 17–18.  The district psychologist testified that the recommendation for thirty-minute

sessions was based on E.P.'s goals and physical development and that the sessions were

sufficiently long for E.P. to make progress towards his objectives.  *Id.* at 17.  The SRO thus

concluded that the "CSE did not indiscriminately reduce the duration of the student's related

services sessions.  Rather, the CSE considered the student's needs and the goals he was working

toward when determining the length of therapy sessions."[16]  *Id.* at 18.  Though Semm apparently disagreed with this conclusion, this is precisely the kind of disagreement between experts on which deference to the SRO is appropriate.  *See R.E.*, 694 F.3d at 189 ("We must give 'due weight' to the state proceedings, mindful that we lack 'the specialized knowledge and experience necessary to resolve . . . questions of educational policy.'  It is not for the federal court to 'ch[oose] between the views of conflicting experts' on such questions." (alteration in original) (internal citation omitted)); *M.T. v. Arlington Cent. Sch. Dist.*, 2022 WL 16857176, at *10 (S.D.N.Y. Nov. 10, 2022); *M.H. v. New York City Dep't of Educ.*, 2011 WL 609880, at *12 (S.D.N.Y. Feb. 16, 2011) ("Without more, the difference of opinion expressed by the private expert is not sufficient to overcome the deference properly accorded to the SRO's careful analysis of the record.").

Relatedly, the Parents argue that IEP's goals were inappropriate because they were "virtually identical goals [to those] set forth in the iBRAIN IEP," which contemplated sixty-minute occupational and physical therapy sessions.  Dkt. No. 27 at 25–26.  The SRO affirmed the IHO's conclusion that the IEP goals were appropriate.  *See* SRO Dec. 6, 20; *see also* IHO Dec. 7.  "These conclusions carry substantial weight, as 'the sufficiency of goals and strategies in an IEP is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers.'"  *A.M.*, 964 F. Supp. 2d at 284 (quoting *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 382 (2d Cir. 2003)).  There is evidence in the record to support the

---

[16] The SRO also noted that iBRAIN's rationale for the longer physical therapy sessions was contradictory.  The record indicated that iBRAIN thought the longer sessions were necessary so that E.P. would not regress but also that the longer physical therapy sessions were required for E.P. "to make the maximal amount of progress."  SRO Dec. 18.  However, as the SRO correctly noted, "the IDEA does not promise maximization of educational benefits."  *Id.* (citing *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 663 (2d Cir. 2020)).

SRO's decision:  as described above, the school psychologist testified that the CSE's

recommendation were based on the goal in the IEP.  *See* R-638; R-753–57.  The SRO thus found

that the length of the occupational and physical therapy sessions was based directly on E.P.'s

stated goals—that is, the SRO found that there was evidence in the record that E.P.'s goals were

entirely compatible with the length of the recommended sessions, even though the goals may

have been "virtually identical" to those included in the iBRAIN IEP.  With that evidence, and in

light of the deference that this Court must show to state administrative officers on matters of

educational policy, the Court finds that the IEP goals were appropriate.  *See A.M.*, 964 F. Supp.

2d at 285 ("Whether it is realistic for A.M. to attain that achievement in light of her disability is a

question of educational policy and expertise that the Court will not second guess.").

## III.    Reimbursement Analysis

The Parents argue that the SRO erred in not determining that the Parents' placement at

iBRAIN for the 2019-2020 school year was appropriate and that the equities favored the Parents.

*See* Dkt. No. 27 at 27–33.  However, the Court finds that the DOE did not deny E.P. a FAPE for

the 2019-2020 school year.  Thus, the Court need not reach the second and third steps of the

*Burlington/Carter* test.  *See M.W. ex rel. S.W.*, 725 F.3d at 135; *M.C. ex rel. Mrs. C.*, 226 F.3d at

66.

Finally, the Parents request an order funding E.P.'s 2019-2020 placement at iBRAIN.

Dkt. No. 27 at 7.  On August 21, 2019, the IHO issued a pendency order, which funded E.P.'s

placement at iBRAIN during the 2019-2020 school year.  IHO Dec. 2.  The IHO subsequently

denied the Parents' request to fund E.P.'s 2019-2020 placement as moot.  *See* IHO Dec. 7.  The

Parents have presented no evidence that the issue of payment for the 2019-2020 school year was

not mooted by the IHO's August 21, 2019 pendency order, and the Court can identify no

independent reasons why it is still a live controversy.  Thus, the Court declines to issue the

requested order.  *See Ramos v. New York City Dep't of Educ.*, 447 F. Supp. 3d 153, 157 (S.D.N.Y. 2020) (collecting cases for the proposition that "[c]ourts have dismissed as moot claims brought under the IDEA where an IHO or SRO has granted the plaintiff's requested relief prior to the court's adjudication" and deeming plaintiff's request for funding for the 2018-2019 school year moot because the IHO already ordered the DOE to provide funding for that year).

## CONCLUSION

For the foregoing reasons, the Parents' motion for summary judgment is DENIED and the DOE's cross-motion for summary judgment is GRANTED.  The Clerk of Court is respectfully directed to close Dkt. Nos. 25 and 31, and to close this case.

SO ORDERED.

Dated: February 13, 2023
      New York, New York
                                       LEWIS J. LIMAN
                                 United States District Judge